UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH SHAKER, et al.,** | ) | **CASE NO. 1:04-CV-01881** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **VILLAGE VOICE MEDIA, INC., et al.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Motions to Dismiss of Defendants, Village Voice Media, Inc., Village Voice Media, LLC, NT Media, LLC, and Cleveland Scene Publishing, LLC. For the reasons that follow, the Motions to Dismiss are granted.

**I.  FACTUAL BACKGROUND**

Defendants, Village Voice Media, Inc. and Village Voice Media, LLC ("Village Voice") are

owners and/or publishers of alternative weekly news publications; and, immediately prior to October 1, 2002, Village Voice owned "The Cleveland Free Times".  Defendants NT Media, LLC and Cleveland Scene Publishing, LLC ("New Times") are also owners and/or publishers of alternative weekly publications; and at the pertinent time, they owned or operated "Scene Magazine" and "New Times LA".  On October 2, 2002, Village Voice entered into two contracts with New Times, by which New Times agreed to discontinue publication of "New Times LA" and Village Voice discontinued publication of "The Cleveland Free Times".  According to the First Amended Complaint, Defendant Village Voice paid $9 million to Defendant New Times for this agreement.  Plaintiffs are individuals who worked as employees of Defendants or their subsidiaries until they were terminated when the above-mentioned publications were discontinued.

On January 27, 2003, the United States filed an antitrust action in the U.S. District Court for the Northern District of Ohio alleging that the foregoing allocation agreement was per se unlawful under the Sherman Act and the Hart-Scott-Rodino Act.  The Defendants entered into a consent decree requiring them to terminate their illegal market allocation agreement; to sell the assets of the shuttered publications to new market entrants; to allow advertisers to terminate their contracts; and to take other actions to ameliorate their unlawful conduct.  When the Ohio Attorney General and the California Attorney General commenced similar state actions, Village Voice and New Times consented to an entry of judgment.

Plaintiffs bring this proposed class action on behalf of all persons in the United States who were terminated from employment with "The Cleveland Free Times" and  "New Times LA" as a result of the unlawful acts engaged in by Defendants on October 2, 2002.  Plaintiffs allege wrongful

discharge in violation of public policy as reflected in Federal, California and Ohio antitrust laws. Plaintiffs also make a claim for civil conspiracy – that Defendants maliciously combined to cause injury to Plaintiffs by engaging in unlawful acts. In addition, Plaintiffs allege that they and their respective employers had a business relationship and that each Defendant intentionally interfered with that relationship and caused a breach and /or termination.

Defendants have filed motions to dismiss Plaintiffs' complaint under Federal Civil Procedure Rule 12(b)(6). Defendants argue that employees who are terminated as the result of supposed antitrust violations do not have standing to raise antitrust claims. Defendants believe, therefore, that Plaintiffs are trying to circumvent their lack of standing by disguising an antitrust lawsuit as a wrongful discharge in violation of public policy claim. Defendants also contend that Plaintiffs cannot prevail on their civil conspiracy claim. Since Plaintiffs do not have standing to bring the underlying antitrust claim, Defendants insist they are precluded from maintaining a claim for civil conspiracy to violate those same antitrust laws. As for Plaintiffs' interference with an employment relationship claim, such a cause of action normally arises when a third party – who is an outsider to the relationship – commits a wrongful act intended to bring about an employment termination. Here Plaintiffs' employers, not strangers, participated in the alleged interference. Moreover, the Defendants point out that the Plaintiffs have not demonstrated a malicious intent, on the part of Village Voice and New Times, directed against them as employees.

The Plaintiffs assert that the Defendants "knowingly violated the Sherman Anti-Trust Act and fired all of their employees to accomplish this unlawful purpose." (Plaintiffs' Opposition Brief at p.1). Further, they insist "[t]here comes a time when the law must change and grow with the people

-3-

it governs" and that the instant case "demands that the law courageously recognize such claims." (Plaintiffs' Opposition Brief at p.1).  Plaintiffs maintain that their wrongful discharge claim constitutes the legitimate underlying tort for civil conspiracy and that the malicious intent needed for interference with employment relations is presumed by Defendants' acts in shutting down two newspapers.

## II.  LAW AND ANALYSIS

### STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  For purposes of the motion, the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party.  *Roth Steel Products v. Sharon Steel Co*., 705 F. 2d 134, 155 (6th Cir. 1983).  In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.  *Conley v. Gibson*, 357 U.S. 41, 45-46 (1957).  If no set of facts can be proved consistent with the allegations in the complaint, then the "claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  *Neitzke v. Williams*, 490 U. S. 319, 327 (1989).

### WRONGFUL DISCHARGE CLAIM

The tort of wrongful discharge in violation of public policy is recognized in Ohio as an exception to the employment- at- will doctrine.  *Greeley v. Miami Valley Maintenance Contractors*, 49 Ohio St. 3d 228 (1990).  The Ohio Supreme Court, in *Collins v. Rizkana*, 73

Ohio St. 3d 65, 69-70 (1995), has identified four elements a plaintiff must demonstrate in order to maintain such a claim: (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation; (2) that dismissal of the plaintiff-employee would jeopardize that policy; (3) that the plaintiff-employee's dismissal was motivated by conduct related to the policy; and (4) that the employer lacked an overriding legitimate business justification for the dismissal.

The articulated policy behind state and federal antitrust laws is to promote free markets and fair competition and to protect consumers and competitors from restraint of trade and monopolies. Even if this Court accepts the clarity of this public policy, the nexus between antitrust policy and employment is not discernible. *Russell v. General Electric Co.*, 1994 WL 16006017, *11 (S.D. Ohio 1994). As Defendant New Times aptly points out: "Plaintiffs in this case do not allege that they were terminated because they reported, complained of, refused to participate in, or threatened to expose Defendants' alleged criminal wrongdoing, or because they performed a statutory obligation or exercised a constitutional right or privilege." (Defendants' Brief in Support of Motion to Dismiss at p. 9). Moreover, Plaintiffs cannot legitimately argue that the Sherman Antitrust Act or parallel state laws were jeopardized by the termination of their employment with the closed publications. Their Complaint recites that, shortly after the October 2, 2002 agreement, the United States brought an action against Village Voice and New Times; and California and Ohio followed suit. Defendants consented to federal and state judgments against them. Taking every assertion in Plaintiffs' Complaint as true, the requisite elements of the claim of wrongful discharge in violation of public policy are lacking. Defendants are entitled to dismissal of the *Greeley* count on the basis of failure

to state a claim upon which relief may be granted.

**CIVIL CONSPIRACY**

Plaintiffs also cannot prevail on their claim for civil conspiracy.  Failure to state a viable underlying tort, outside of conspiracy itself, is fatal.  *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc*., 29 F. Supp. 2d 801, 817-818 (N.D. Ohio 1998). Since the Plaintiffs lack standing to bring an antitrust action based upon the allegation that the closing of their newspapers and the elimination of their jobs were the products of a conspiracy between their respective employers, Section 4 of the Clayton Act, 15 U.S.C. § 15 cannot constitute the underlying action for civil conspiracy.  *Province v. Cleveland Press Publishing Co., et al.*, 787 F. 2d 1047 (6th Cir. 1986).  Additionally, as this Court has found that Plaintiffs' *Greeley* claim cannot be maintained, wrongful discharge cannot be the foundational element of the alleged civil conspiracy.  Therefore, Defendants' Motions to Dismiss the Plaintiffs' civil conspiracy claim under 12(b)(6) are granted.

**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS**

Plaintiffs claim that Village Voice and New Times each intentionally interfered with the employment relationship between the other party and its former employees.  Under Ohio law, plaintiffs must demonstrate: (1) a business relationship between the plaintiff and a third party; (2) the wrongdoer's knowledge of the business relationship; (3) intent on the part of the alleged wrongdoer to procure the discontinuance or termination of the business relationship;  (4) intentional interference by the alleged wrongdoer which causes the third party to discontinue or terminate the business relationship; (5) a lack of privilege or justification; and (6) resulting damages. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415 (1995); *Brahim v. Ohio College of*

*Pediatric Medicine*, 99 Ohio App. 3d 479 (8th Dist. 1994).  Defendants seek dismissal because Plaintiffs have not alleged the intent to cause the termination of their employment and because Plaintiffs have not sufficiently pleaded malice.  The Complaint's allegations recite that Defendants entered into an agreement "to allocate markets and reduce outputs".  (Amended Complaint at paragraph 8).  Nowhere is it even mentioned that Defendants were motivated by the intent to lay off Plaintiffs.  Also, Plaintiffs merely state that: "Defendants' conduct was willful, wanton, reckless and/or malicious".  To prevail, Plaintiffs must meet a heightened standard and demonstrate a malicious intent to procure the termination of their employment.  "[T]he wrongful result which the publishers allegedly sought to attain was not the termination of plaintiffs' employment.  Rather, plaintiffs' loss of employment was, at best, simply a byproduct of the publisher's alleged wrongful conduct." *Province*, supra at 1053.  Because Plaintiffs have not alleged the Defendants' purposeful intent to cause their termination, and because no facts have been recited to support malice against Plaintiffs on the part of Village Voice and New Times, Defendants' Motions to Dismiss the Count for intentional interference with business relations are granted.

### III.  CONCLUSION

Although wrongful discharge in violation of public policy, set forth in *Greeley*, is a recognized exception to Ohio's long-held principle of employment- at- will, this Court believes that Plaintiffs are asking for an inappropriate expansion of existing law. Quoting from Plaintiffs' Opposition Brief at page 2, "It is time for the law to recognize and dignify these injuries.  It is time for the laws which govern our workplace to grow."  Of course, this Court is mindful of the

human side of the story and is not callous to the suffering brought about by job loss.  However, to broaden *Greeley*'s scope in the context of antitrust violations would be unwise, unnecessary, and an impermissible extension of the Court's authority.  At-will employment is consistent with the concepts of a free market and unrestrained trade and commerce. Employers can discharge at-will employees for good reasons, bad reasons or no reason at all.  Likewise, at-will employees may elect to leave their positions for personal, economic, unstated or frivolous reasons.  Moreover, these Plaintiffs were not employed under contract; were not "whistleblowers"; and did not act, nor refuse to act, with regard to the public policy behind the Sherman Antitrust Act.  There is no nexus between Plaintiffs' employment and the public good sought to be protected by federal and state statutes. The tort relief  Plaintiffs seek would necessarily nullify at-will employment which has existed in the State of Ohio for decades. The Court finds this could not possibly have been intended by the drafters of the antitrust laws.  In the case at bar, the overriding public policy of promoting competition and free trade was completely vindicated by the judicial process.  Furthermore, a common-law remedy is superfluous where a statute adequately protects society's interests.  *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244 (2002).

Therefore, the Motions of Defendants, Village Voice and New Times, to Dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure  are

granted.

IT IS SO ORDERED.

DATE:   May 25, 2005

                                        /s/ Christopher A. Boyko
                                        CHRISTOPHER A. BOYKO
                                        United States District Judge